IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| VS. | : | CR 06-106-02S |
| | : | |
| KHALID MASON | : | |

**PROFFER OF COUNSEL FOR KHALID MASON**

The Court requested a proffer of what the Defendant, Khalid Mason, will attempt to prove at an evidentiary hearing on his Motion to Suppress. In response to the Court's request, we, Michael J. Connolly and Kristie M. Passalacqua, counsel for Khalid Mason ("Mason"), upon information and belief, offer the following:

**Paul Price, Jr.**

Mason intends to call his father, Paul Price, Jr. ("Price") to testify at the evidentiary hearing. The Defendant asserts that Price will testify consistent with his Affidavit, attached hereto at Exhibit A.

**Rashaad Dailey**

Mason intends to call his friend, Rashaad Dailey ("Dailey"), at the evidentiary hearing. The Defendant asserts that Dailey will testify consistent with his Affidavit, attached hereto at Exhibit B.

**John M. Cicilline**

Mason intends to call John M. Cicilline ("Cicilline") at the evidentiary hearing. At this time, we have not been advised by Cicilline's counsel whether Cicilline would testify at the evidentiary hearing in this case regarding his representation of Mason and Derek Isom ("Isom"), or whether he would exercise his Fifth Amendment right not to tesify. If Cicilline were to

exercise his Fifth Amendment right, we intend to ask all questions pertaining to his representation of Mason and the facts and events set forth in Mason's Motion to Suppress so that Mason may avail himself of the adverse inferences arising from Cicilline's assertion of his Fifth Amendment privilege.

**Lisa Torres**

Mason intends to call Lisa Torres ("Torres") to testify at the evidentiary hearing. We have learned from counsel for Torres, Attorney Miriam Conrad, that if called to testify at a hearing in this case, Torres would exercise her Fifth Amendment right not to testify when asked questions regarding her interactions with Mason and Price. If Torres were to exercise her Fifth Amendment right, we intend to ask all questions pertaining to her interactions with Mason and Price and the facts and events set forth in Mason's Motion to Suppress so that Mason may avail himself of the adverse inferences arising from Torres' assertion of her Fifth Amendment privilege.

**Derek Isom**

Mason intends to call Isom to testify at the evidentiary hearing. At this time we are unsure, however, if Isom will agree to testify. We believe Isom has knowledge regarding his own representation by Cicilline and Torres. We further believe Isom would testify about issues regarding police corruption. We are not at liberty to disclose our sources for this information at this time. We note that Attorney Patrick Sullivan is not the source for this information. We also note that Attorney Sullivan will be present at the hearing on June 4, 2007, to advise the Court what, if anything, Isom will testify with respect to the issues asserted in Mason's Motion to Suppress. We refer the Court to the written statements of Isom, attached hereto at Exhibit C.

**Khalid Mason**

A decision regarding whether Mason will testify at the evidentiary hearing on his Motion to Suppress has not yet been made. There is the very real chance, however, that he may testify. If Mason should choose to take the stand, he would testify as follows:

Shortly after he learned of the warrant for his arrest in January of 2004, Mason hired Attorney John M. Cicilline to represent him and Isom. Cicilline and his colleague, Torres, told Mason that they could make his arrest warrant go away. They also told him that they could get Isom out on bail. Cicilline and Torres informed Mason that Cicilline would represent one of them and his father, Attorney Jack Cicilline, would represent the other one. Cicilline and Torres demanded a $25,000.00 retainer fee to represent Mason and Isom.

Torres explained to Mason that she and Cicilline would work with Providence Police Detective Scott Partridge ("Partridge") to resolve things for him and Isom. She referred to him as "Scotty." Mason had his father, Price, pay Torres $25,000.00 cash for his and Isom's retainer/attorney fees. Mason spoke with Cicilline numerous times and he told Mason that he would be taking Partridge to the Super Bowl in Texas to figure out a way to take care of things. Then, after the Super Bowl, Cicilline told Mason that he had taken Partridge to the Super Bowl, that they had discussed Mason's and Isom's situations, and that they would need $100,000.00 each to make things go away.

At this same time, Mason began to think that Cicilline was playing him and Isom against each other. Mason refused to pay Cicilline and Torres the additional $200,000.00 and demanded that Torres return the $25,000.00 that they had already paid. Mason threatened to go to the police if the money was not returned.

Torres returned $15,000.00 of the $25,000.00 to Mason's father, Price. Cicilline and Torres would not return all of the money because they said they took Partridge to the Super Bowl and had done work on their behalf with law enforcement.

Mason was arrested in Connecticut on October 6, 2006. While he was being transported back to Rhode Island, he explained to the Deputy U.S. Marshals that he was set up by Cicilline and people working with him. He explained that the drugs found at 214 Pavilion Avenue were planted there by law enforcement officers working for Cicilline and that he was innocent of the charges against him.

Several months later, while Mason was being detained, he learned that Cicilline had been indicted in Massachusetts. Soon after that, he appeared in Court at a hearing for one of his previous attorneys to withdraw. While at court, Mason saw the U.S. Marshals. He asked one of them if he had seen the news, meaning the Cicilline Indictment. The Marshal replied "yes". He then told Mason that his partner would like to talk to him after Mason saw the Judge. When Mason returned to his holding cell, Deputy U.S. Marshal Wattik ("Wattik") was waiting for him. Wattik told Mason that he knew the day Mason was apprehended that Mason was telling the truth about Cicilline and Torres, but that Wattik could not tell Mason that at that time, because it was not indicted. Wattik asked Mason if he would cooperate. Mason told Wattik that he would cooperate as long as the crooked officers, including Partridge, were exposed. Wattik told Mason that he would do what he could, but that there was no quarantee. Mason did not have an attorney at this time.

Wattik offered Mason a 5K1 deal. Mason refused it because he was innocent and did not want to plead guilty. Mason told Wattik that if the police officer involvement was exposed, the Government would have absolutely no case against him and he would prove his innocence.

Mason talked to Wattik about what he knew about Cicilline, but he was not able to answer all of Wattik's questions because he did not have all of the information Wattik was looking for. Wattik told Mason that he would speak with his boss, Jim McCormack and get back to Mason.

Mason would further testify that the drugs found at the search of 214 Pavilion Avenue were not his, that the sworn statements in the search warrant application and Partridge's Affidavit are lies, and that he never participated in the controlled buy alleged in Partridge's Affidavit.

**The Department of Justice**

At this time, counsel for Mason is unaware of the evidence the Department of Justice may have that would be exculpatory as to Khalid Mason. According to the Government's Motion to Quash, AUSA Beckner has made a request of AUSA Weinreb in Boston for the Boston United States Attorney's Office to review the Cicilline case file for such information. In addition, Defendant issued a subpoena duces tecum to the Department of Justice for this information. The Government moved to quash this subpoena and a hearing will be conducted on June 4, 2007 to determine whether the Department of Justice Office will be compelled to respond to the subpoena.

**The Providence Police Department**

At this time, counsel for Mason is unaware of the evidence the Providence Police Department may have that would link Partridge or any other law enforcement officer, to the assertions in Mason's Motion to Suppress. We anticipate that the Government will call Partridge to testify at the evidentiary hearing, presumably to refute the assertions in Mason's Motion to Suppress and this Proffer. We will be prepared to cross-examine Partridge. The Defendant issued a subpoena duces tecum to the Providence Police Department seeking information related

to the allegations in his Motion to Suppress. The City of Providence and the Government moved to quash this subpoena and a hearing will be conducted on June 4, 2007 to determine whether the Providence Police Department will be compelled to respond to the subpoena.

**Deputy United States Marshal Michael Wattik**

Depending upon the discovery we obtain from the Government, we may call Deputy U.S. Marshal Wattik to testify at the evidentiary hearing with respect to his conversations with Mason while Mason was being transported to Rhode Island in October 2006 and in Mason's holding cell. We would also question Wattik about his conversations and meeting with Price. We have reason to believe that Wattik will testify that in October 2006 Mason told him that Cicilline, together with corrupt members of the Providence Police Department, were responsible for framing him in regard to the case pending against him. We believe Wattik will further testify that when he encountered Mason in January 2007, he informed Mason that he had reason to believe that Mason's statements in October were true and Wattik further advised Mason that he could not discuss this with Mason in October because the investigation of Cicilline was not public at that time.

**U.S. Drug Enforcement Administration Special Agent James McCormack**

Depending upon the discovery we obtain from the Government, we may call Special Agent McCormack ("McCormack") to testify about his conversations with Price. We refer the Court to Paul Price's summary of statements made by McCormack in his Affidavit, attached hereto at Exhibit A.

**Documents Filed Under Seal**

The evidence to be submitted in support of the pending motion will include records obtained from the Disciplinary Council, filed under seal with the court on this date.

Respectfully submitted,

Counsel for Khalid Mason

/s/ Kristie M. Passalacqua
Kristie M. Passalacqua, Bar No. 6945
Hinckley, Allen & Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, RI 02903
(401) 274-2000
(401) 277-9600 (fax)
kpassalacqua@haslaw.com

/s/ Michael J. Connolly
Michael J. Connolly (MA BBO # 638811)
Hinckley, Allen & Snyder LLP
28 State Street
Boston, MA 02109
(617) 345-9000
(617) 345-9020 (fax)
mconnolly@haslaw.com

**CERTIFICATION**

I hereby certify that on June 1, 2007, a copy of the foregoing Proffer was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this foiling thorough the Court's CM/ECF system.

/s/ Kristie M. Passalacqua