**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **CR. No. 06-106-02S** |
| | : | |
| **KHALID MASON** | : | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION TO SUPPRESS**

**INTRODUCTION**

The defendant contends that the Court should suppress the 303 grams of crack cocaine seized from his apartment based upon his assertion that the affiant on the search warrant conspired with John M. Cicilline, Joseph Bevilacqua, Jr., Juan Giraldo, and Lisa Torres to "plant" drugs at the defendant's apartment. The defendant's conspiracy theory, however, does not negate the presumption of validity that attaches to a search warrant affidavit, nor has he submitted an offer of proof that satisfies his substantial burden to establish that facts included in the affidavit are false.

**FACTS**

In December 2003, the Providence Police Department began to investigate 214 Pavilion, 3rd Floor, Providence, RI and 85 Dunnell Avenue, 2nd Floor, Pawtucket, RI - the residences of Khalid Mason and Derrick Isom. During the week preceding January 16, 2004, Detectives Scott Partridge and Peter Conley met with a confidential informant (CI) who had proven to be reliable in the past. The CI told the detectives that Mason and Isom were

selling crack cocaine from 214 Pavilion Avenue, 3rd Floor. Upon receiving this information, the detectives arranged for the CI to conduct a controlled purchase of crack cocaine from Mason and Isom. They then arranged for a second purchase of crack cocaine, this time from Isom alone. Based upon all of this information, Detective Partridge obtained search warrants from Judge Albert E. Derobbio for 214 Pavilion Avenue, 3rd Floor, and 85 Dunnell Avenue, 2nd Floor. See Exhibit 1.

On January 16, 2004, the detectives with the narcotics division set up surveillance on 214 Pavilion Avenue. At approximately 4:20 p.m., they observed Isom leave the residence. Shortly thereafter, the detectives attempted to stop Isom, but he fled from the police. Isom then called Mason.

While executing the search warrants, the detectives discovered numerous items associated with narcotics trafficking. In the kitchen of 214 Pavilion, 3rd Floor, detectives found 100 grams of crack cocaine, a pan, baggies, including baggies with the corners cut off, additional boxes of baggies, a RI License Plate "Khalid," men's clothing, and a scale. In a bedroom of 214 Pavilion Avenue, 3rd Floor, detectives found $2,360 in a Brooks bag, paperwork, pictures of Khalid Mason, a drug ledger, approximately 57 grams of crack cocaine, and more men's clothing. The detectives also searched the attic stairway and found a

Brooks plastic bag containing approximately 150 grams of crack cocaine.

All drug exhibits were sent to the laboratory where they were tested for cocaine base and weighed. The net weight of all drug exhibits is 303.91 grams, and all exhibits are cocaine base, "crack." The packaging material and the scale were sent to the Bureau of Criminal Investigations for fingerprint analysis; however, no fingerprints were recovered.

During the execution of the search warrant at 85 Dunnell Avenue, detectives met with Malika Chinnery, the mother of Isom's children. In the front bedroom, inside Isom's jacket pocket, detectives found $9,551. In the back bedroom, detectives found personal paperwork belonging to Isom, a Nokia cell phone, photographs of Isom, a bill of sale for a BMW and keys. Officers also found men's clothing in the apartment.

Because Derrick Isom was a fugitive, detectives followed Erik Isom, Derrick Isom's brother. They followed him to a Ramada Inn in Massachusetts where detectives observed Derrick Isom enter his brother's vehicle. The vehicle was stopped and Derrick Isom was arrested. In his possession, he had $1,672 and a NEXTEL phone that he had used to call Mason as he fled from police.

After his arrest on January 16, 2004, Isom confessed to police that his fingerprints would probably be on the drugs and that a number of people including himself deal drugs from 214

Pavilion Avenue, 3rd Floor. He denied that the drugs were his. Again, on January 20, 2004, Isom, after waiving his Miranda rights, admitted that his fingerprints would be on the drugs and that he and Mason deal about 500 grams every other day. Isom confessed a third time, this time in a recorded interview, when he was arrested on October 7, 2006 on federal charges.

Upon learning about the raid on his apartment, Mason fled from the police. He remained a fugitive for nearly two years. During this period of time, Mason obtained false identification in the name of Therry Denson to preclude law enforcement from locating him. Eventually, on October 5, 2006, deputies with the United States Marshal's Service found Mason living in Connecticut and arrested him.

In December 2006, Derrick Isom pled guilty to conspiring with Khalid Mason to distribute and possess with the intent to distribute crack cocaine. He also pled guilty to aiding and abetting Khalid Mason in the possession with the intent to distribute crack cocaine.

Mason, the defendant in this matter, has filed a motion to suppress arguing that the evidence was obtained in violation of his Fourth Amendment rights. The defendant alleges that Detective Partridge's search warrant affidavit was fabricated. In support of his allegations, the defendant attaches an indictment against John M. Cicilline, Joseph A. Bevilacqua, Jr.,

Juan Giraldo, and Lisa Torres. He has also provided the Court with an affidavit with attached exhibits from Paul Price, Jr., the defendant's father; Rashaad Dailey, the defendant's friend; two disciplinary committee complaints filed against John M. Cicilline; and two statements purportedly written by Derrick Isom. Additionally, the defendant has submitted a proffer of counsel.

**ARGUMENT**

"[A] presumption of validity" exists "with respect to the affidavit supporting the search warrant." Franks v. Delaware, 438 U.S. 154, 171 (1978). Accordingly, a defendant is required to make a "substantial preliminary showing" that the affidavit contains a false or reckless statement prior to receiving a hearing regarding the validity of that affidavit. See id. at 155. The Supreme Court in Franks stated the following with respect to the defendant's burden of proof:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits of sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

Id. at 171-72.

The Supreme Court took great pains in the Franks case to make sure that lower courts did not interpret this ruling in a manner that would enable defendants to abuse such hearings. The Court pointed out that the truthful showing required by the Fourth Amendment,

> [D]oes not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct, for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.

Id. at 165. It is the veracity of the affiant that is in question, not the veracity of the affiant's source of information. See United States v. Tzannos, 460 F.3d 128, 138 (1st Cir. 2006) (recognizing that the Franks requirements cannot be satisfied by an allegation showing that the informant relayed misinformation to the affiant); United States v. Southard, 700 F.2d 1, 10 (1st Cir. 1983), cert. denied, 464 U.S. 823 (1983) ("Franks' requirements cannot be satisfied by a showing that an informer lied to an unsuspecting affiant, even when the lie was deliberate.").

To obtain a Franks hearing, the defendant must first make "a 'substantial preliminary showing' that (1) a false statement, (2) knowingly and intentionally, or with reckless disregard for the truth, was included in the warrant affidavit, and (3) the allegedly false statement is necessary to the finding of probable

cause." United States v. Ranney, 298 F.3d 74, 78 (1st Cir. 2002) (citing Franks, 438 U.S. at 155-56); see also Southard, 700 F.2d at 8. Conclusory allegations do not satisfy the defendant's burden. See United States v. Higgins, 995 F.2d 1, 4 (1st Cir. 1993).

Similar to the allegation made in the case at hand, in Southard, 700 F.2d at 10, the defendants submitted affidavits contesting the very existence of the informants. While noting that such an allegation if true warrants a finding that the affiant falsified material statements in the affidavit, the court found that the defendants' failed to make the "'substantial preliminary showing' required by Franks." Id. In relying on the sworn affidavits of three individuals denying facts contained in the wiretap affidavit, the defendants "set up a swearing contest; either they or [the affiant] are lying." Id. The court concluded that the defendants' denials did not meet the "substantial preliminary showing" required by Franks. Id. In affirming the district court, the First Circuit held that the defendants' "unsupported denials" do not satisfy their burden. See id. at 10 & n.6.

In United States v. Valerio, 48 F.3d 58, 62 (1st Cir. 1995), the district court originally found that the defendant's affidavit contesting the facts in the search warrant affidavit warranted a Franks hearing. The court then heard testimony from

the defendant consistent with his affidavit disputing the facts in the search warrant and the detective affiant testified to facts consistent with his affidavit. See id. The court then stated it had been a mistake to hold a Franks hearing in the first place and denied the defendant's motion to suppress. See id. at 61-62. The First Circuit affirmed the district court's decision to not hold an in camera hearing regarding the confidential informant.

Here, the defendant attempts to meet his burden by claiming that the entire affidavit is false. The defendant alleges that the affiant, Detective Scott Partridge, conspired with various individuals to frame him. In accordance with the guidance provided by Southard, the Court should find that the defendant's submissions do not satisfy his burden under Franks. The government will address each of the defendant's submissions in turn.

**A. Proffer of Counsel**

At no point has the defendant in a "sworn or otherwise reliable statement" denied a single factual allegation contained within the search warrant affidavit. See Franks, 438 U.S. at 171-72. Nor has any reason for his failure to submit such an affidavit been provided. The most that the defendant offers to the Court is a statement of his counsel that the affidavit contains "lies" and that the defendant never participated in a

controlled buy or rode in Isom's car. Statements of counsel, however, are not evidence. Furthermore, even if the defendant were to submit an affidavit claiming that the facts described in the search warrant affidavit were false, a defendant's denials do not meet the "substantial preliminary showing" required by Franks. See Southard, 700 F.2d at 10.

The defendant's counsel's proffer describes alleged conversations between the defendant and John M. Cicilline and Lisa Torres. All of the conversations mentioned occurred after the execution of the search warrant. Furthermore, none of the hearsay statements relate to the facts described in the search warrant or even purport to state that the affidavit is false. Nowhere within all of the hearsay statements presented does anyone allege that the affiant, Sergeant Scott Partridge, claimed to have planted the drugs.

Even if the Court were to believe that John M. Cicilline or Lisa Torres made such statements, the fact that they made the statements is not evidence that the Sergeant Partridge lied. This is especially true since a key component of the alleged double hearsay statements, the 2004 Super Bowl trip, cannot possibly be true. Sergeant Partridge was the case agent in an ongoing federal jury trial in the U.S. District Court for the District of Rhode Island at the time of the Super Bowl. See Exhibit 2.

More than that, defense counsel's facts have changed with the various filings submitted. In his motion to suppress, the defendant claims that John M. Cicilline represented him, and John F. "Jack" Cicilline represented Isom. See Defendant's Motion to Suppress Physical Evidence, p. 4. Now the defendant no longer asserts that John M. Cicilline was his lawyer since it is undisputed that John M. Cicilline represented Isom. See Proffer of Counsel, p. 3.

There is absolutely no evidence that any member of the Providence Police Department accepted bribes from John M. Cicilline or Lisa Torres. Although John M. Cicilline and Lisa Torres may very well have claimed to have an "inside man," the travel of the defendant's and Isom's case suggests the opposite. The defendant's arrest warrant was signed by the judge on January 17, 2004 and entered into NCIC on January 20, 2004. See Exhibit 4. Isom was arrested on January 16, 2004, an information was filed on November 19, 2004 in Rhode Island Superior Court, and Isom was not granted bail until January 21, 2005. Isom was represented by Artin Coloian by that time. The defendant's allegations boil down to a complaint that his bribery efforts failed.

Additionally, the proffer of counsel contains misstatements regarding the defendant's interaction with Deputy U.S. Marshal Wattik. In describing the October 6, 2006 conversation between

DUSM Wattik and the defendant, the defendant neglects to mention that he admitted he was a drug dealer. At that time, the defendant told DUSM Wattik that if the police had looked in his car or at another address of his they probably would have found drugs. See Exhibit 5. The proffer of counsel also alleges that Wattik was waiting to speak with the defendant after Court in January 2007. This is untrue. DUSM Wattik was actually in Court with the defendant, and after Court the defendant requested to speak with DUSM Wattik, not the other way around. Moreover, DUSM Wattik never told the defendant that he knew the defendant was telling the truth. DUSM Wattik also never offered the defendant a 5K1 deal.

Finally, in an effort to bolster the alleged statements by John M. Cicilline or Lisa Torres regarding their claim of a relationship with Sergeant Partridge, the defendant's counsel alleges that a "Pocket Tech Scale" was added to the evidence in March 2004. See Defendant's Motion to Suppress, p. 5. However, as evidenced by the affidavit of Detective Peter Conley, the scale was listed in the evidence on January 16, 2004 in a report on file with the Rhode Island Attorney General's Office. See Exhibit 3.

**B. Affidavit of Paul Price, Jr.**

Much of the same arguments are true with respect to the claims of Paul Price, Jr.. Mr. Price describes conversations he

allegedly had with John M. Cicilline and Lisa Torres after the search warrant. His affidavit does not allege personal knowledge that a single fact in the search warrant affidavit was false. Mr. Price does not even deny that his son was a drug dealer.

**C. Affidavit of Rashaad Dailey**

Mr. Dailey, a friend of the defendant, submitted an affidavit. He does not allege personal knowledge that a single fact in the search warrant affidavit was untrue. Instead, Mr. Dailey's affidavit describes conversations he allegedly had with John M. Cicilline and Lisa Torres that have nothing to do with the veracity of the search warrant affidavit.

**D. Alleged statements of Derrick Isom**

The alleged statements of Derrick Isom offer nothing to this analysis. The statements and the disciplinary complaint fail to disclaim a single fact in the search warrant affidavit and contradict each other. The first statement appears to claim that all contact with John M. Cicilline and Lisa Torres occurred through Paul Price, Jr. and the defendant, adding another level of hearsay to the growing mound. The disciplinary complaint indicates that Erik Isom, Derrick Isom's brother, dealt with Cicilline. However, the statements and the complaint are particularly meaningless given that Mr. Isom pled guilty to conspiring with the defendant to distribute and possess with the

intent to distribute the crack cocaine seized on January 16, 2004.

**E. Expected testimony of John M. Cicilline and Lisa Torres**

The defendant asks the Court to make an adverse inference from the expected invocation of Fifth Amendment rights by these two individuals. However, the defendant asks the Court to make an inference that the Supreme Court of the United States and the First Circuit Court of Appeals will not make. See United States v. Hale, 422 U.S. 171, 176-78 (1975) ("In most circumstances silence is so ambiguous that it is of little probative force."); United States v. Zaccaria, 240 F.3d 75, 79-80 (1st Cir. 2001); see also United States v. Shoup, 476 F.3d 38, 44 (1st Cir. 2007) ("The government may not invite the jury to make any inference regarding the absence of a witness whose unavailability has arisen because of the invocation of his Fifth Amendment right against self-incrimination."); United States v. Johnson, 488 F.2d 1206, 1211 (1st Cir. 1973) ("Neither side has the right to benefit from any inferences the jury may draw simply from the witness' assertion of the privilege either alone or in conjunction with questions that have been put to him."). Given the pending prosecution against these two individuals, there are valid reasons aside from culpability for deferring comment.

## CONCLUSION

In his motion to suppress, the defendant asks the Court to assume that because a local defense attorney and his paralegal are alleged to have made statements regarding the affiant of the search warrant after its execution that somehow the affiant was untruthful. The government, however, cannot be held accountable for statements allegedly made by a defense attorney seeking clients.

The defendant also asks the Court to assume that because he and his father complained to a Deputy U.S. Marshal and a Special Agent with the Drug Enforcement Administration that somehow the government attributes truth to the defendant's complaints.

For the reasons set forth above, the United States respectfully requests that this Honorable Court deny the defendant's motion for a Franks hearing.

Respectfully submitted,

UNITED STATES OF AMERICA
By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj

CERTIFICATION

On June 6, 2007, I caused the within "Government's Response to Defendant's Motion to Suppress" to be filed electronically and it is available for viewing and downloading from the ECF system.

Electronic notification:

Ms. Kristie M. Passalacqua
Hinckley, Allen and Snyder LLP
50 Kennedy Plaza, Suite 1500
Providence, Rhode Island 02903

/s/ SANDRA R. BECKNER
SANDRA R. BECKNER
Assistant U. S. Attorney
NY Bar
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
Tel (401) 709-5000
Fax (401) 709-5001
sandra.beckner@usdoj